UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WANDA ROBINSON,
    Plaintiff

    vs                                  Case No. 1:06-cv-848
                                        (Weber, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's

applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), and the

Commissioner's response in opposition. (Doc. 17).

PROCEDURAL BACKGROUND

Plaintiff, Wanda Robinson, was born on May 25, 1958, and was 46 years old at the

time of the Administrative Law Judge's first decision, and 47 years old at the time of the

ALJ's second decision. Plaintiff has a ninth grade education and past work experience as a

certified nursing assistant and cashier. Plaintiff filed applications for DIB and SSI alleging

disability since September 1, 2002, due to diabetes, hypertension, headaches, depression, and

pain in her back, hand and leg. Plaintiff's applications were denied initially and upon

reconsideration. Plaintiff requested and was granted a de novo hearing before an ALJ. On

December 7, 2004, plaintiff, who was represented by counsel, appeared and testified at a

hearing before ALJ Daniel Shell. A medical advisor and vocational expert also appeared and

testified. On May 24, 2005, the ALJ denied plaintiff's applications for benefits. (Tr. 74-93).

     Plaintiff appealed and the Appeals Council remanded the case for further proceedings.

The ALJ was ordered to resolve an inconsistency in the residual functional capacity finding.

(Tr. 116-18).

     A supplemental hearing was held on February 21, 2006. Plaintiff, who was again

represented by counsel, appeared and testified before ALJ Shell. (Tr. 58-71). A vocational

expert also testified.

     On March 28, 2006, the ALJ issued a decision denying plaintiff's DIB and SSI

applications. The ALJ determined that plaintiff suffers from severe impairments of chronic

spinal sprain/strain and degenerative joint disease of the left leg with residual effects of left

knee arthroplasty including reflex sympathetic dystrophy (Tr. 23), but that such impairments

do not alone or in combination meet or equal the level of severity described in the Listing of

Impairments. (Tr. 24). The ALJ determined that plaintiff's allegations of disability are not

supported and less than credible. (Tr. 26). According to the ALJ, plaintiff retains the residual

functional capacity (RFC) for a full range of sedentary work, with the exception that she

should be permitted to alternate between sitting and standing as needed with the opportunity to

stand as much as five minutes per hour (but not necessarily at any one time). (Tr. 20). The

ALJ determined that although plaintiff does not have the functional capacity to perform her

past relevant work, she is able to perform a significant number of jobs in the national economy

2

such as order clerk and final assembly. (Tr. 30). The ALJ further determined that if plaintiff was restricted to performing low-stress work or simple two-step tasks, she would nevertheless be capable of performing between 1,700 and 1,900 of the jobs previously cited. (Tr. 30). Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

Plaintiff requested review by the Appeals Council. The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable

3

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the

4

Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if
the individual's impairments do not meet or equal those in the Listing, the Commissioner
must determine whether the impairments prevent the performance of the individual's regular
previous employment. If the individual is unable to perform the relevant past work, then a
prima facie case of disability is established and the burden of going forward with the evidence
shifts to the Commissioner to show that there is work in the national economy which the
individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v.
Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence.
*Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v.
Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by
showing an inability to perform the relevant previous employment, the burden shifts to the
Commissioner to show that plaintiff can perform other substantial gainful employment and
that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291
(6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To
rebut a prima facie case, the Commissioner must come forward with particularized proof of
plaintiff's individual capacity to perform alternate work considering plaintiff's age, education,
and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d
321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735
F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the
Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut
plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587

5

F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations

6

or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior

7

administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been

resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,*

17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v.*

*Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may

award benefits where the proof of disability is strong and opposing evidence is lacking in

substance, so that remand would merely involve the presentation of cumulative evidence, or

where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v.*

*Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.

1985).

## MEDICAL EVIDENCE

Plaintiff's history is significant for five separate surgeries on her left knee culminating

in a total knee arthroplasty (replacement) in 1999. (Tr. 54, 522). After one of the surgeries,

plaintiff developed symptoms consistent with a diagnosis of Reflex Sympathetic Dystrophy

(RSD)[1] in her left leg. (Tr. 212-215, 522).

---

[1]Social Security Ruling 03-02p, which governs the evaluation of cases involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrom (RSDS/CRPS), provides:

> RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger RSDS/CRPS. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time.

8

Plaintiff was initially followed by Dr. John Cowden, D.P.M., from September 10, 2001 to December 13, 2002. (Tr. 299). Dr. Cowden reported that plaintiff was first seen for pain in both feet. He attempted several different treatment modalities to treat plaintiff's pain, including steroid injections and blocks, but without much effect. Dr. Cowden stated that "[o]ver the time period, it became obvious that the RSD was beyond the just simple plantar fasciitis." (Tr. 299).

Dr. Cowden then referred plaintiff to Dr. Stephen Pledger, M.D., an orthopedic surgeon, for implantation of a dorsal column stimulator. (Tr. 299, 528). While plaintiff initially obtained some relief after the stimulator implant, in December 2002 plaintiff presented to Dr. Cowden that the pain was escaping the dorsal column stimulator and was worse than ever. (Tr. 299). At that time, she had palpable inflammatory tissue in the heel and her plantar fasciitis had swollen enough to give her a secondary neuroma in the 2-3 space of the left foot. Surgical correction of the plantar fasciitis was considered but rejected as an option because of the RSD to avoid further trauma to the foot. (Tr. 299). Plaintiff was referred to Dr. Corey Russell for shock wave therapy on December 26, 2002. Dr. Cowden opined that plaintiff would not be able to bear weight for longer than fifteen or twenty minutes at a time. (Tr. 300). Dr. Cowden also opined that the RSD is the "overriding factor" and limits her "in both standing and sitting jobs because if she is sitting she still has cramps." (Tr. 300). He assessed her functional limitations as extreme and her prognosis as "very poor." (Tr. 300).

_____

Although the pathogenesis of this disorder (the precipitating mechanism(s) of the signs and symptoms characteristic of RSDS/CRPS) has not been defined, dysfunction of the sympathetic nervous system has been strongly implicated.

9

In December 2001, Dr. Pledger inserted a spinal cord stimulator to treat plaintiff's left leg pain. (Tr. 512, 522-23). In May 2002, plaintiff presented with increasing low back and left leg pain since her last visit. (Tr. 506). Her gait was antalgic. Dr. Pledger documented tenderness to palpation over the left sciatic notch, bilateral muscle spasm, and decreased sensation in her left leg at the lateral and anterior thigh, lateral and medial calf and the first web space of the plantar foot. (Tr. 506-507). Dr. Pledger ordered a CT scan of her lumbar spine in May 2002 which revealed a diffuse disc bulge at L4-5 and L5-S1 which resulted in a mild narrowing of the caudal aspect of the exit neural foramina bilaterally at L4-5and L5-S1. (Tr. 504). Dr. Pledge diagnosed mechanical low back pain, left sacroiliac joint inflammation and left greater trochanteric inflammation. (Tr. 503).

In September 2002, plaintiff injured her lower back after slipping on the floor at work. (Tr. 480). Dr. Pledger started to treat plaintiff again after her injury on February 27, 2003. At the time, in addition to her RSD pain, plaintiff presented with left leg pain and numbness, with increasing symptoms since her last visit. (Tr. 480). She also had numbness on the inside of her thigh and the outside of her right calf and foot. Dr. Pledger opined that the RSD symptoms seemed to be shifting to her right side versus her left. He also reported that the spinal cord stimulator had become less effective since her fall and could not be reprogrammed to cover her right leg and back. (Tr. 480). Plaintiff had decreased sensation in her right leg in the lateral thigh and calf. Dr. Pledger diagnosed right L5 radiculopathy and referred plaintiff for an epidural block at the L4-5 level. (Tr. 481). Dr. Pledger stated:

> Mrs. Robinson's burning discomfort in the back and legs appeared within the next couple of months to be an aggravation of her RSD. Since the SCS was not able to be programmed to work, we tried to do a chemical sympathectomy

10

with Dibenzyline, which was unsuccessful. When I reevaluated her within a couple of months, the Epidural Block and Dibenzyline did not seem to help. Her pain appeared to be worsening. Her activity was worsening. We tried some oral Morphine to see if that would help.

l saw Mrs. Robinson again in June 2003. She continued to complain of low back pain, pain in both legs and numbness in both legs. Instead of just having the situation down her right leg, we were now dealing with both legs. Both legs were numb. Physical examination really was unchanged. We continued with the Avinza, an oral Morphine, which continues to help.

When last seen on 9/10/2003, she was continuing to complain of low back pain, bilateral leg pain and bilateral leg numbness. l felt that with the new, right L5 radiculopathy this needed to be evaluated further. I have asked for a Myelogram with a subsequent CT Scan.

(Tr. 481).

In October 2003, Dr. Pledger's examination revealed positive straight leg raising bilaterally at 2+ and decreased sensation in both thighs. Sensation was increased in all other areas of the left leg. (Tr. 476-477). He diagnosed right L5 radiculitis, lumbar strain, and reflex sympathetic dystrophy, lower extremity. (Tr. 477). In a letter dated October 3, 2003, Dr. Pledger stated that plaintiff's symptoms were getting worse and that her Myelogram in September revealed diffuse bulging at the L4-5 level. (Tr. 474). He reported that the "Spinal Cord Stimulator is not covering the new back pain that she has from her injury of September 15, 2002, and I do feel that the RSD is now spreading to both sides." (Tr. 475).

Dr. Pledger's progress notes in October through December document worsening pain, positive straight leg raising, tenderness to palpation, inability to heel walk or toe walk, and decreased sensation in some areas, but increased in other areas with numbness and tingling. (Tr. 438, 461, 469, 471). In December 2003, Dr. Pledger inserted a second Spinal Cord Stimulator into plaintiff's spine to help control her pain. (Tr. 448-49). However, the

11

stimulator failed and was subsequently removed. (Tr. 444). Dr. Pledger then referred plaintiff
to Dr. Lisa Lichota, D.O., a pain management specialist. (Tr. 437).

Dr. Lichota's initial evaluation on February 23, 2004 revealed tenderness on palpation
of sacroiliac joints bilaterally, decreased range of motion of the lumbar spine, and positive
straight leg raising. Sensation of the lower extremities showed hyperesthesia[2] bilaterally, left
greater than right. Dr. Lichota diagnosed lumbosacral radiculopathy, acute sacral sprain/
strain, and reflex sympathetic disorder, lower left. (Tr. 433-36).

Dr. Pledger's office records from March 2004 through August 2004 document
tenderness to palpation, an inability to heel or toe walk, antalgic gait, absent reflexes in the
knee and ankle bilaterally, and positive straight leg raising. (Tr. 429, 538, 542).

An MRI of June 4, 2004 showed a small central posterior disc herniation of L5-S1
without neural impingement. (Tr. 568).

On September 20, 2004, Dr. Lichota submitted an RFC indicating she had treated
plaintiff on a monthly basis since February 23, 2004. (Tr. 529). Dr. Lichota opined that
plaintiff would have pain or other symptoms severe enough to interfere with her ability to
concentrate and pay attention on a frequent to constant basis. (Tr. 530). Dr. Lichota limited
plaintiff to lifting less than 10 pounds frequently, and 10 pounds occasionally. (Tr. 531). Dr.
Lichota assessed that plaintiff would be limited in her ability to sit to less than or equal to two
hours per day, but no more. She would be further reduced in her ability to stand to less than
two hours in an eight hour work day. (Tr. 531). When asked if plaintiff would need a job

---

[2]An abnormal or pathological increase in sensitivity to sensory stimuli, as of the skin to touch or the ear to
sound. http://medical-dictionary.thefreedictionary.com/hyperesthesia.

allowing for the ability to alternate between sitting and standing during an eight hour day, Dr. Lichota stated that plaintiff "can't do an 8 hour day." (Tr. 531). Dr. Lichota identified the following clinical findings in support of her opinion: altered gait, tender S1 joints, decreased range of motion, abnormal MRI, failed spinal cord stimulator trial, muscle spasms, swelling, weakness, and loss of sensation. (Tr. 529-30). Dr. Lichota opined that on average, plaintiff would likely miss about four days per month from work as a result of her impairments or treatment. (Tr. 532).

Dr. Lichota's office records from June 2004 through December 2005 document findings of muscle spasm, reduced range of motion, positive straight leg raising, abnormal gait, loss of sensation, joint swelling and tenderness. (Tr. 550, 554, 570, 573, 577, 580, 607, 610, 616, 619, 624, 627, 636, 638, 643, 646, 647, 650, 655, 658).

Richard Hutson, M.D., an orthopedic surgeon, testified at the December 2004 administrative hearing as a medical expert. (Tr. 42-57C). He stated that plaintiff's impairments do not meet or equal a listed impairment. (Tr. 57-57A). Dr. Hutson opined that based on the "multiplicity" of plaintiff's problems she would be limited to sedentary work with a sit/stand option, "maybe five minutes out of every hour but it would not have to be consecutive." (Tr. 57A). In response to questions by plaintiff's attorney, Dr. Hutson admitted that plaintiff's long-standing RSD in the left leg could migrate to the right leg and to other parts of the body. (Tr. 57B-57C).

An MRI of August 2, 2005 showed a moderate central disc protrusion at L5-S1 with "possible encroachment on the S1 nerve roots though this is uncertain and clinical correlation is needed." (Tr. 591).

13

On August 30, 2005, Dr. Lichota requested approval for a series of lumbar epidural blocks to treat plaintiff's "significant low back pain." (Tr. 612). Dr. Lichota reported that plaintiff has a moderate central disc protrusion at the L5-S1 level that does efface the thecal sac. She reported that plaintiff has not responded to more conservative therapy. (Tr. 612).

On October 25, 2005, Dr. Pledger performed a discogram[3] which revealed "degenerative disc disease at L5-S1 with concordant pain reproducing the patient's similar pain" and "some myositis that reproduced a lot of her present discomfort." (Tr. 592-593). Dr. Pledger recommended that plaintiff undergo a fusion surgery at L5-S1. (Tr. 664).

Plaintiff was treated with lumbar epidural spinal blocks and lumbar epidural steroid injections (Tr. 585, 586, 604, 630, 632, 634), sacroiliac joint injections (Tr. 418, 420, 422), radiofrequency percutaneous neurolysis (Tr. 586, 590), and various prescription pain medications, including Oxycotin, Lidoderm, Duragesic, and Percocet. (Tr. 596, 608, 611, 615, 617, 627, 643).

## OPINION

Plaintiff assigns three errors in this case. First, plaintiff contends the ALJ erred by failing to give controlling weight to plaintiff's treating physicians. Second, plaintiff asserts the ALJ erred by giving inadequate consideration to plaintiff's credibility even though her testimony was supported by medical evidence. Third, plaintiff argues the ALJ erred by relying on an improper hypothetical to the vocational expert which does not constitute substantial

---

[3]A discogram is an enhanced X-ray examination of the intervertebral discs used to determine which disc has structural damage and whether it is causing pain. http://www.allaboutbackpain.com/html/spine_diagnostics/ spine_diagnostics_discogram.html.

14

evidence of plaintiff's vocational abilities. For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence and recommends that this matter be reversed and remanded for benefits.

The ALJ determined that plaintiff has the RFC for a limited range of sedentary work with a sit/stand option. In making this determination, the ALJ rejected the assessments of Drs. Cowden and Lichota whose assessments, if credible, would be consistent with a finding of "disability." (Tr. 81). Instead, the ALJ relied on the opinions of non-examining physicians to determine plaintiff's RFC. The ALJ's decision in this regard is without substantial support in the record.

Although the ALJ is not bound by a treating physician's opinion, he must set forth in his decision a reasoned basis for rejecting the opinion. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)(failure to specify the reason for giving a treating physician's opinion no weight is reversible error); *Jones v. Heckler*, 760 F.2d 993, 997 (9th Cir. 1985)(ALJ must set forth "specific, legitimate reason[s]" for disregarding a treating physician's opinion), both cited with approval in *Shelman*, 821 F.2d at 321. The ALJ must articulate "good reasons" for not giving weight to a treating physician's opinion and such reasons must be based on the evidence of record. *See Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). *See also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Lenon v. Apfel*, 191 F. Supp.2d 968, 977 (W.D. Tenn. 2001); *Sigler v. Secretary of Health and Human Servs.*, 892 F. Supp. 183, 187-88 (E.D. Mich. 1995).

The ALJ declined to give controlling or even great weight to the assessments of Drs.

15

Cowden and Lichota because their opinions were "neither well supported by medically

acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial

evidence in the case record." (Tr. 22). The ALJ determined that Dr. Cowden's conclusions

"are founded upon pure speculation and are inconsistent with the findings of other medical

sources such as Dr. Albert and Dr. Holbrook who indicated that the claimant could perform

light work." (Tr. 22). The ALJ further found:

> Clinical test results did not show evidence of substantial abnormality that
> would account for the degree of functional limitation described by Dr. Cowden
> or Dr. Lichota. The only plausible explanation for the rather pessimistic
> assessment of the claimant's functional capabilities provided by Dr. Cowden
> and Dr. Lichota is that such assessments were based on the uncritical
> acceptance of the claimant's subjective complaints and allegations. . . . The
> degree of limitation described by Dr. Cowden and Dr. Lichota is not
> substantiated by the weight of the evidence and cannot be considered credible.

(Tr. 22).

The ALJ's "reasons" for discounting the opinions of the treating physicians are

without substantial support in the record. First, the ALJ's concludes that the treating

physicians' assessments are not "well supported by medically acceptable clinical and

laboratory diagnostic techniques nor consistent with other substantial evidence in the case

record" (Tr. 22) without ever explaining why. The ALJ wholly fails to explain how Dr.

Cowden's or Dr. Lichota's assessments are inconsistent with the other evidence in the record.

(Tr. 22). The ALJ must do more than offer his conclusions. He must set forth his own

interpretations and explain why they, rather than the doctor's, are correct. *Wilson*, 378 F.3d at

544. Without any explanation on the record as to why the ALJ believes the treating

physicians' opinions are not supported or inconsistent with the other evidence of record, the

16

Court is left to speculate on the rationale behind the ALJ's decision. In view of the ALJ's failure to articulate why the treating doctors' assessments are not supported, the Court cannot conclude that the ALJ's finding is supported by substantial evidence.

Second, the record is replete with objective and clinical findings supporting the treating physicians' opinions. The record shows that plaintiff developed Reflex Sympathetic Dystrophy (RSD) as a result of her knee surgeries and that the RSD became worse after she suffered a work injury in September 2002. Dr. Cowden, who treated plaintiff for over one year, reported that plaintiff's RSD was the "overriding factor" causing plaintiff's pain and limiting her ability to stand and sit. (Tr. 300, 528). Dr. Cowden reported palpable inflammatory tissue and swelling so severe that it "gave [plaintiff] a secondary neuroma in the 2-3 space of the left foot." (Tr. 299). Dr. Cowden documented the various treatment modalities used in an effort to relieve plaintiff's increasing pain, including injections, local and steroid blocks, and the dorsal column stimulator implanted by Dr. Pledger. (Tr. 299). In addition, and as explained below, Dr. Cowden's report is supported by the records of Dr. Pledger, the orthopedist to whom Dr. Cowden referred plaintiff for treatment of her RSD.

Dr. Lichota's assessment is also supported by the objective and clinical findings of record. Contrary to the ALJ's assertion that Dr. Lichota's assessment was based on her "uncritical acceptance" of plaintiff's complaints, Dr. Lichota specifically identified the clinical findings upon which she relied in assessing plaintiff's RFC, *i.e.,* altered gait, tender S1 joints, decreased range of motion, abnormal MRI, failed spinal cord stimulator trial, muscle spasms, swelling, weakness, and loss of sensation. (Tr. 529-30). Dr. Lichota's initial clinical examination and her subsequent treatment notes support the treating physician's opinion in

17

this regard. The initial clinical examination revealed tenderness on palpation of sacroiliac joints bilaterally, decreased range of motion of the lumbar spine, positive straight leg raising, and hyperesthesia of the lower extremities bilaterally. (Tr. 433-36). Dr. Lichota also obtained the records from Dr. Pledger at that time to assist in her evaluation and treatment of plaintiff. (Tr. 436). Dr. Lichota's treatment records thereafter showed muscle spasms, reduced range of motion, positive straight leg raising, abnormal gait, loss of sensation, joint swelling, and tenderness. (Tr. 550, 554, 570, 573, 577, 580, 607, 610, 616, 619, 624, 627, 636, 638, 643, 646, 647, 650, 655, 658). MRI findings in June 2004 showed a small central disc herniation at L5-S1 (Tr. 568) and a subsequent MRI one year later showed a moderate central disc protrusion at L5-S1 effacing the thecal sac. (Tr. 591, 612).

The ALJ also ignores Dr. Pledger's treatment records and reports which fully support the assessments of both Dr. Cowden and Dr. Lichota. Dr. Pledger's treatment notes show plaintiff's RSD symptoms became progressively worse after her September 2002 work injury. Subsequent to this injury, the RSD spread to her right leg in addition to the left.[4] (Tr. 475, 480). Dr. Pledger's records show worsening pain and activity, and unsuccessful treatment with the spinal cord implants, chemical sympathectomy, and other medications. (Tr. 481, 475, 476-77, 449-49, 444). Dr. Pledger's records also document right L5 radiculopathy, positive straight leg raising, tenderness to palpation, inability to heel walk or toe walk, antalgic gait, absent reflexes in the knee and ankle bilaterally, and decreased sensation in some areas, but increased in other areas with numbness and tingling. (Tr. 429, 438, 461, 469, 471, 481, 538,

---

[4]Social Security Ruling 03-02p recognizes RSD as a chronic pain syndrome that may progress beyond the limb or body area originally involved.

18

542). A myelogram in September 2003 showed diffuse bulging at the L4-5 level. (Tr. 474). A discogram performed by Dr. Pledger in October 2005 revealed "degenerative disc disease at L5-S1 with concordant pain reproducing the patient's similar pain" and "some myositis that reproduced a lot of her present discomfort" (Tr. 592-593) for which Dr. Pledger recommended fusion surgery at L5-S1. (Tr. 664).

The treating physicians' records, taken together, show a history of intractable pain and a consistent progression of RSD with some notes of partial, transient success in treatment or improvement in symptoms. As Social Security Ruling 03-02p recognizes, however, such findings are characteristic of RSD and are not substantial evidence of cure or remission. The Ruling recognizes that the pattern of the symptoms may not be entirely consistent due the "transitory nature of the objective findings and the complicated diagnostic process involved." SSR 03-2p. In addition, as documented above, plaintiff's lumbosacral radiculopathy and chronic lumbosacral sprain/strain further limit her ability to perform work activities. Dr. Lichota expressed the opinion that plaintiff essentially could not tolerate the physical demands of working an 8-hour workday. Dr. Cowden confirmed that plaintiff's functional limitations were extreme. The Social Security Ruling recognizes the importance of the longitudinal perspective a treating physician can provide and, in this case, the ALJ erred by not giving deference to the supported opinions of plaintiff's treating physicians.

To the extent the ALJ relied on the opinions of the non-examining state agency doctors and medical advisor for the conclusion that plaintiff retains the RFC for a range of sedentary work, his decision is not supported by substantial evidence. The state agency reviewers offered their opinions in April and July 2003, and were without the benefit of *any* of the

19

medical evidence post-dating July 2003, including any of Dr. Lichota's assessments, progress

notes, treatment records, and MRI results. In addition, Dr. Hutson, the medical advisor who

testified at plaintiff's first hearing in December 2004 and who opined that plaintiff could

perform sedentary work with a sit/stand option, was without all of the medical evidence of

record, including the August 2005 MRI results, the 2005 discogram results, and Dr. Lichota's

and Dr. Pledger's 2005 records and reports. Also, the ALJ failed to explain in any

illuminating way why he elected to elevate the opinion of a single non-examining doctor over

those of plaintiff's treating physicians. *See Rogers v. Commissioner of Social Sec.,* 486 F.3d

234, 246 (6th Cir. 2007). It is well-settled that Dr. Hutson's opinion as a non-examining

doctor was entitled to less weight than the opinions and reports of plaintiff's treating

physicians who had treated plaintiff over a period of time. *See Shelman v. Heckler,* 821 F.2d

316, 321 (6th Cir. 1987); *Sherrill v. Secretary of HHS,* 757 F.2d 803, 805 (6th Cir. 1985).

Considering the weight and deference which is to be given to the treating physicians' reports,

the opinions of the non-examining state agency physicians and medical advisor do not

constitute substantial evidence supporting the ALJ's RFC finding.

For these reasons, the Court finds that the ALJ's RFC determination is not supported

by substantial evidence. Thus, the ALJ's reliance on the RFC for a limited range of sedentary

work to find plaintiff could perform other work in the local and national economy is without

substantial support in the record. Accordingly, the Court finds the ALJ's decision is not

supported by substantial evidence and should be reversed.

To the extent plaintiff also contends the ALJ's credibility finding is not supported by

substantial evidence, the Court notes that plaintiff's testimony is supported by and consistent

20

with the reports of Dr. Cowden, Dr. Lichota, and Dr. Pledger as discussed above. Because the ALJ failed to articulate and support his reasons for rejecting the limitations imposed by the treating physicians, the ALJ's credibility finding on this same issue is not supported by substantial evidence.[5]

This matter should be remanded for an award of benefits. "[A]ll essential factual issues have been resolved and the record adequately establishes . . . plaintiff's entitlement to benefits." *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). Based on the residual functional capacity assessment of Dr. Lichota, plaintiff would be unable to perform even sedentary work for a full 8-hour workday. The Court notes that Dr. Lichota's assessment would preclude an ability to do work on a "regular and continuing" basis for a 40-hour work week as required by Social Security Ruling 96-8p. Several courts have observed that "the Commissioner takes the position that at step five of the sequential disability determination, only a claimant's ability to perform full-time work will permit an ALJ to render a decision of 'not disabled.'" *Barsotti v. Commissioner, Social Sec. Admin.*, 2000 W.L. 328024 (D. Or. March 13, 2000). *See Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000); *Kelly v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999); *Sims v. Apfel*, 172 F.3d 879 (10th Cir. 1999)(unpublished), 1999 W.L. 55334, at *3; *Matz v. Sisters of Providence in Oregon*, No. Civ. 98-1598-JO, 1999 W.L. 1201682 (D. Or. Dec. 8, 1999). In other words, "[a] claimant is disabled if he cannot perform full-time work. SSR 96-8p." *Criner v. Barnhart*, 208 F. Supp.2d 937, 956 n.21 (N.D. Ill. 2002); *Gotz v.*

---

[5]In view of the above analysis, the Court need not reach plaintiff's last assignment of error.

21

*Barnhart*, 207 F. Supp.2d 886, 897 (E.D. Wis. 2002). "[P]art-time work does not constitute working on a 'regular and continuing' basis." *Carr v. Apfel*, 1999 W.L. 1489892, *5 (N.D. Ohio 1999). The vocational expert also testified that there were no jobs plaintiff could perform based on Dr. Lichota's assessment that plaintiff would likely miss four days of work per month. (Tr. 70). Thus, the proof of disability is strong and opposing evidence is lacking in substance. Since a remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose, *Faucher*, 17 F.3d at 176, this matter should be remanded for an award of benefits.

## IT IS THEREFORE RECOMMENDED THAT:

This case be REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent with this opinion and remanded for an award of benefits.

Date: 2/6/08

Timothy S. Hogan
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

WANDA ROBINSON,
    Plaintiff

    vs                                    Case No. 1:06-cv-848
                                            (Weber, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within TEN DAYS after being served with this Report and Recommendation ("R&R"). Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this R&R is being served by mail. That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within TEN DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).